J-A11019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JANET L. LANDON AND JOHN A. LATSCHAR, INDIVIDUALLY, AND AS ADMINISTRATORS OF THE ESTATE OF AARON LANDON LATSCHAR, DECEASED | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : : | No. 1545 MDA 2023 |
| SOLUCIONES COSMETICAS, SA DE CV; NEW YORK PACKAGING II, LLC D/B/A REDIBAG USA, LLC; KENNIE'S MARKETS, INC.; PRIVATE D CAPITAL GROUP CORPORATION; BUNZL DISTRIBUTION MIDATLNTIC, LLC D/B/A BUNZL YORK; AND ABC CORPORATIONS 1-20 | : : : : : : : : : | |

Appeal from the Order Entered October 16, 2023
In the Court of Common Pleas of Adams County Civil Division at No(s):
2023-SU-0360

BEFORE: BOWES, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:            **FILED: MARCH 28, 2025**

Janet L. Landon and John A. Latschar, individually, and as administrators of the estate of their son, Aaron Landon Latschar, deceased (collectively, "Appellants") appeal the order granting the preliminary objections filed by New York Packaging II, LLC (NYP) d/b/a Redibag USA, LLC; Kennie's Markets, Inc. ("Kennie's Markets"); and Bunzl Distribution Midatlantic, LLC d/b/a Bunzl York ("Bunzl") (collectively, "Appellees") and dismissing Appellants' complaint. We reverse.

The trial court outlined the facts and procedural history as follows:

This litigation arises from the unfortunate death of Aaron Landon Latschar . . . in June of 2020 after drinking hand sanitizer which allegedly contained excessive levels of methanol. On December 7, 2021, [the decedent's] parents brought suit individually and as administrators of his estate in the United States District Court for the Middle District of Pennsylvania against the manufacturer and numerous parties believed to be in the distribution chain . . . . After extensive pleadings, including amended pleadings, cross-claims, the removal and substitution of parties, and a case management conference, the [District Court] entered an order on January 18, 2023 dismissing the federal action for lack of [diversity] jurisdiction. Following dismissal of the federal action, [Appellants] commenced litigation in th[e] Court [of Common Pleas of Adams County] by filing a praecipe to transfer pursuant to 42 Pa.C.S.A. § 5103(b)[1] on March 23, 2023. The praecipe, filed in the Adams County Prothonotary's Office, included six filings from the U.S. District Court for the Middle District of Pennsylvania. Although the documents in [Appellants'] initial filing include what appears to be the seal of the U.S. District Court for the Middle District of Pennsylvania, none of the records are otherwise certified by the District Court. On April 11, 2023, [Appellants] filed with this court approximately [seventy-five] additional pleadings originally filed in the docket of the federal action. The pleadings were certified and carried an exemplification certificate executed by the Clerk of the United States District Court for the Middle District of Pennsylvania.

Trial Court Opinion, 10/16/2023, at 1-2 (footnotes and unnecessary capitalization omitted).

On May 5, 2023, NYP filed "Preliminary Objections Pursuant to Pa.R.Civ.P. 1028(a)(2)" seeking to strike Appellants' *praecipe* to transfer the

---

[1] As we discuss in the body of this memorandum, 42 Pa.C.S. § 5103 is a savings statute that preserves the date of filing in federal court and provides the mechanism to transfer a case from federal court to the Court of Common Pleas where the matter is dismissed for a lack of jurisdiction. **See** 42 Pa.C.S. § 5103(a), (b)(1) and (b)(2).

J-A11019-24

case from federal court in accordance with § 5103(b).[2] Endorsed with a notice

to plead, NYP's preliminary objection asserted, *inter alia*, that Appellants'

_____

[2] Rule 1028 provides as follows:

> (a) Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:
>
> > (1) lack of jurisdiction over the subject matter of the action or the person of the defendant, improper venue or improper form or service of a writ of summons or a complaint;
> >
> > . . . .
> >
> > (2) failure of a pleading to conform to law or rule of court or inclusion of scandalous or impertinent matter;
> >
> > (3) insufficient specificity in a pleading;
> >
> > (4) legal insufficiency of a pleading (demurrer);
> >
> > . . . .
> >
> > (5) lack of capacity to sue, nonjoinder of a necessary party or misjoinder of a cause of action;
> >
> > (6) pendency of a prior action or agreement for alternative dispute resolution;
> >
> > . . . .
> >
> > (7) failure to exercise or exhaust a statutory remedy; and
> >
> > (8) full, complete and adequate non-statutory remedy at law.

Pa.R.Civ.P. No. 1028(a). As the note to rule 1028(a) explains, preliminary objections that challenge a nonconforming pleading, insufficient specificity in a pleading, and a demurrer need no additional evidence and may be determined from facts of record. **See** Pa.R.Civ.P. 1028 Note (stating in, pertinent part, " . . . preliminary objections raising an issue under subdivision
*(Footnote Continued Next Page)*

- 3 -

*praecipe* to transfer failed to conform with § 5103(b) because it was neither prompt nor complete insofar as the initial filing did not include all of the certified documents from the federal district court. *See* NYP's Preliminary Objections Pursuant to Pa.R.Civ.P. 1028(a)(2), 5/5/23, at 5-9.

Likewise, on May 8, 2023, Bunzel and Kennie's Market collectively invoked Rule 1028(a)(2) in filing joint preliminary objections, also inscribed with a notice to plead, that sought to strike Appellants' *praecipe* to transfer and related documents based on the delayed filing and the lack of service. *See* Bunzl/Kennie's Market Preliminary Objection, 5/8/23, at ¶¶11-30. Bunzl and Kennie's Market asserted, "[w]here, as here, a plaintiff fails to comply with [42 Pa.C.S. § 5103(b)], a defendant properly may respond to this failure via preliminary objections in the nature of a motion to strike per Pa.R.Civ.P 1028(a)(2)." *Id*. at ¶13.

Appellants timely responded to Appellees' preliminary objections on May 19 and 23, 2023, respectively. The trial court ultimately addressed the various preliminary objections on the briefs,[3] sustained the objections,

_____

(a)(2), (3) or (4) may be determined from facts of record so that further evidence is not required."). Instantly, the trial court could have elected to schedule an evidentiary hearing, but because the underlying controversy concerning the allegedly non-conforming pleading did not require additional fact-finding, a hearing was not required.

[3] All three parties filed respective *praecipes* for oral argument. None requested an evidentiary hearing; however, Appellants' supplemental
*(Footnote Continued Next Page)*

dismissed the complaint with prejudice, and directed the Adams County Prothonotary's Office to mark the matter closed. **See** Trial Court Order, 10/16/23.[4] Essentially, the trial court found that there was "some prompt effort" on the part of the Appellants, but that the 61-day period between the January 18, 2023 dismissal of the federal court action and Appellants' filing of the praecipe to transfer on March 23, 2023, evidenced a "lack of good faith[.]" **Id**. at 8.

The trial court declined to find whether any delays resulted from "a clerical issue," but nevertheless ruled that "there is no credible indication of any urgency on the part of . . . counsel as a result of the February 13, 2023

_____

response to Appellees' reply briefs added the following qualification: "If [Appellees] continue to deny the existence of [a transfer] agreement, Appellants submit that they are entitled to discovery, including depositions, of all counsel involved in those conversations surrounding the agreement that [Appellees] have breached." Appellants' Supplemental Response, 5/30/23 at 4. Nevertheless, no such demand followed. The trial court ultimately determined that any proposed agreement concerning Appellants' intent to transfer the case is immaterial because "future intent and actual conduct are significantly different propositions." Trial Court Opinion, 10/16/23, at 9 (footnote omitted).

[4] The trial court sustained the preliminary objections summarily by stating, "AND NOW, this 16th day of October, 2023, it is hereby Ordered that the Preliminary Objections of the several Defendants are sustained. The Complaint filed in this matter is dismissed with prejudice. The Adams County Prothonotary's Office is directed to mark this matter closed." Trial Court Order, 10/16/23. Neither the order nor the ensuing trial court opinion suggested that the preliminary objections were sustained for any reason other than the basis specifically requested, *i.e.*, that the *praecipe* to transfer and related documents failed to conform to law as recognized in Pa.R.Civ.P. 1028(a)(2).

contact [with the federal clerk of court] despite the rapidly approaching deadline." *Id*., at 8 n.8. Moreover, the trial court declined to find whether Appellees suffered any prejudice from the delay in the transfer of the action. *See id*., at 8-9.

This timely appeal followed. Appellants complied with the court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925, and the trial court entered a responsive Rule 1925(a) opinion which fully incorporated the court's statement of rationale outlined in the October 16, 2023 opinion filed concomitantly with the order sustaining Appellees' preliminary objections.

Appellants present a single question for our review: "Whether this Honorable Court should overrule the trial court's holding and find that the case was properly and promptly transferred pursuant to 42 Pa.C.S. § 5103." Appellants' brief at 3.

We begin by outlining the pertinent legal principles.

> Our standard of review of an order of the trial court overruling or sustaining preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court. Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief.

- 6 -

***Fiedler v. Spencer***, 231 A.3d 831, 835-36 (Pa.Super. 2020) (citations omitted) (cleaned up).

In setting forth the mechanism to transfer a case filed in federal court embracing any part of Pennsylvania to the Court of Common Pleas upon a finding that the federal court lacked jurisdiction, § 5103(b), concerning the transfer of erroneously file matters, provides thusly:

**(b)   Federal cases**.—

(1)   . . . . In order to preserve a claim under Chapter 55 (relating to limitation of time), a litigant who timely commences an action or proceeding in any United States court for a district embracing any part of this Commonwealth is not required to commence a protective action in a court or before a magisterial district judge of this Commonwealth.   Where a matter is filed in any United States court for a district embracing any part of this Commonwealth and the matter is dismissed by the United States court for lack of jurisdiction, any litigant in the matter filed may transfer the matter to a court or magisterial district of this Commonwealth by complying with the transfer provisions set forth in paragraph (2).

(2)   Except as otherwise prescribed by general rules, or by order of the United States court, **such transfer may be effected by filing a certified transcript of the final judgment of the United States court and the related pleadings in a court or magisterial district of this Commonwealth.** The pleadings shall have the same effect as under the practice in the United States court, but the transferee court or magisterial district judge may require that they be amended to conform to the practice in this Commonwealth.   Section 5535(a)(2)(i) (relating to termination of prior matter) shall not be applicable to a matter transferred under this subsection.

42 Pa.C.S. § 5103(b) (emphasis added).

Critically, the statute lacks a definite time frame. While our decisional law has fashioned a promptness requirement, little legislative guidance exists on the operation of § 5103(b), generally. *See e.g.*, *Williams v. F.L. Smithe Machine Company, Inc.*, 577 A.2d 907, 910 (Pa. Super. 1990) ("[W]e now emphasize that in order to protect the timeliness of an action under 42 Pa.C.S.A. § 5103, a litigant, upon having his case dismissed in federal court for lack of jurisdiction, must promptly file a certified transcript of the final judgment of the federal court and, at the same time, a certified transcript of the pleadings from the federal action.").

Appellants assert that the trial court erred in dismissing their complaint because it crafted an artificial thirty-day deadline and ignored their persistent efforts to comply with § 5103 despite administrative delays that were outside of their control. *See* Appellants' brief at 32 ("the trial court erred in the application of the law and abused its discretion in finding that [Appellants] did not properly transfer the case or that there was some procedural impropriety or prejudice that merits dismissal with prejudice at this point.") As it relates to the documented administrative issues, they continued, "the trial court erred in the application of the law and abused its discretion in finding that [Appellants] were not, at all times, exceedingly diligent and seeking to complete the transfer as quickly as possible[.]" *Id*. at 59. Specifically, they asserted, "[t]he undisputed details of their efforts show that [Appellants] were

as prompt as humanly possible, despite numerous inadvertent administrative mistakes outside of the [Appellants'] control."). *Id*. at 61. Similarly, Appellants highlighted that neither NYP, Bunzl, nor Kennie's Markets alleged that they were prejudiced by the delay or disputed Appellants' "detailed descriptions of the communications with the District Court clerk and Adams County Prothonotary demonstrating numerous, acknowledged administrative delays." *Id*. at 44, 61 n.6.[5]

Preliminary objections seeking dismissal of the underlying action "may be properly sustained by the trial court only if the case is free and clear of doubt." **American Housing Trust, III v. Jones**, 696 A.2d 1181, 1183-84 (Pa. 1997). As discussed *infra*, our review the pleadings of record reveals that the trial court erred in failing to overrule the objection because Appellants pled sufficient facts to demonstrate advance notice and outline the administrative breakdown they encountered in attempting to transfer the case from federal court to the Adams County Court of Common Pleas pursuant to § 5103(b).

---

[5] Collectively, Appellees counter that the certified record supports the trial court's determination that Appellant failed to perfect the transfer promptly. As an alternative basis for affirmance, NYP and Kennie's Markets argue that the order on review should be upheld because Appellants did not serve them with any state court filings until May 5, 2023, which was about five weeks after those transfer documents were filed with the trial court. However, the trial court did not invoke an alleged violation of Pa.R.Civ.P. 440, relating to service of legal papers other than original process, as a basis for dismissing the action with prejudice or make any findings of fact with respect to service pursuant to that provision. Likewise, neither NYP nor Kennie's Markets cite legal authority which would justify the action's dismissal with prejudice on that ground.

As it relates to advance notice of the transfer, Appellants' responses to Appellees' preliminary objections leveled the following assertion.

13. [O]n January 12, 2023, [Appellants] memorialized what they believed was the agreed upon plan going forward procedurally, in correspondence filed with the District Court (**a draft of which was forwarded to counsel for comment and revision**, while all counsel were discussing whether a remand upon consent or transfer under § 5103 would be more procedurally appropriate):

Pursuant to this firm's earlier telephone conversation with Your Honor's chambers, [Appellants] do not oppose the pending motions to dismiss on jurisdictional grounds. **Under 42 Pa. C.S. § 5103(b), [Appellants] intend to transfer this matter to the state court** by filing a certified transcript of the final judgment of dismissal without prejudice and a certified transcript of the pleadings from the federal court. . . .

***See*** [Various documents attached to the response as Exhibit B and Exhibit C]. As expected, [Appellees] never filed or voiced any opposition or concerns.

Response to Preliminary Objections, 5/19/23, at 4-5, ¶13 (emphases added).

As to their efforts to promptly transfer the case, Appellants responded as follows:

15. On January 18, 2023, as expected, the district court entered its order (the "Final Judgment") dismissing the case for lack of diversity jurisdiction.

16. Immediately thereafter, [Appellants] began the process of obtaining the documents necessary to open the case and receive a docket number in this court, as [Appellants] knew that a § 5103 transfer was likely not a part of the daily, or yearly, routine for either the district court clerk or the Adams County Prothonotary. Those efforts included a January 20, 2023, teleconference with . . . the Adams County Prothonotary wherein . . . counsel . . . referenced the statute and confirmed what is required under the applicable statute, namely: "A certified transcript of the final

judgment of the United States court and the related pleadings." *See* 42 Pa. C.S. § 5103(b). [C]ounsel . . . confirmed with the Adams County Prothonotary the specific documents that should be filed with this court, which consisted of: a certified copy of the district court's Final Judgment dismissing [Appellants'] Second Amended Complaint; a certified copy of [Appellants'] Second Amended Complaint; and all of the related pleadings.

17. [C]ounsel . . . also immediately contacted the district court clerk's office to order certified copies of the [Final] Judgment and related pleadings from the district court. The . . . clerk's office then asked for a formal letter request that they could review and then respond with an invoice and timeframe for the required certified documents, which [counsel] . . . then sent.

18. Having not heard back from the district court clerk's office, on January 26, 2023, . . . counsel . . . contacted the . . . clerk's office for an update on the requested invoice and w[as] informed that it was finished and being transmitted, after which the certified copies of the documents requested could be produced. The district court clerk then filed an annotation on the federal electronic docket stating, "Copy fees sent to attorney for Plaintiff." This filing was automatically served on all counsel of record through the district court's electronic docket.

19. Having still not received the invoice, on January 30, 2023, . . . counsel . . . contacted the district court clerk . . . for an update on the requested invoice and w[as] informed that it was finished and being transmitted, after which the certified copies of the documents requested could be produced.

20. Having not received the invoice, on February 13, 2023, . . . counsel . . . contacted the district court clerk's office for an update on the requested invoice. The district court clerk apologized and explained that they were in the process of moving their Harrisburg location to a new courthouse. The district court clerk was able to then email an invoice, which [counsel] paid immediately over the phone

21. [C]ounsel . . . was then directed to the Scranton location of the district court clerk's office and, after attempting to contact that office several times, was informed, on March 2, 2023, that the district court clerk had made a mistake and **never sent the**

**certified copies of the documents requested for printing**, but that the district court clerk's office would expedite the request.

22.     On March 10, 2023, having received certified copies of the Final Judgment and related pleadings from the district court clerk, . . . counsel . . . contacted the Adams County Prothonotary, and explained that . . . counsel . . . would be mailing copies of a *praecipe*, the confirmed certified Final Judgment and related pleadings, and a filing fee, in order to open the case and receive a docket number in this court, pursuant to the applicable statute.

23.     The Adams County Prothonotary confirmed receipt of the *praecipe*, certified Final Judgment and related pleadings on March 15, 2023.

24.     On March 23, 2023, the Adams County Prothonotary called . . . counsel . . . to advise that it would hold the day that it received the *praecipe*, certified Final Judgment and related pleadings as the date for the case to be opened, but **could not open the case until it received certified copies of other documents on the district court's docket**[.]

25.     [C]ounsel immediately called the district court clerk's office to determine how to receive certified copies of the additional documents requested by the Adams County Prothonotary.  As the federal docket was relatively lengthy, . . . the district court clerk suggested that . . . counsel . . . ask the Adams County Prothonotary whether it would accept, in addition to the certified Final Judgment and related pleadings already provided, a certified copy of the entire district court docket sheet.  The Adams County Prothonotary replied that would **not** be acceptable to open the case and assign a docket number.

27.     On March 27, 2023, . . . counsel . . . advised the district court clerk of same. The district court clerk then offered to provide the additional requested documents with a Certificate of Exemplification signed by the district judge. [C]ounsel . . . then immediately confirmed that this would be acceptable with the Adams County Prothonotary [in order to open the case and assign a docket number.].

          . . . .

29.    On March 29, 2023, . . . counsel . . . filed a *Praecipe* for Exemplification with the district court.  Thereafter, on April 4 and 5, 2023, the district court clerk then filed a notice of the Exemplification and receipt of payment, respectively.  Until the transfer, there was no filed case, no docket number, no parties' attorneys of record, and no parties.  In the federal case, where there was a pending case, the parties' attorneys of record were already served with the Final Judgment and related pleadings through the electronic docket as they were filed.  In this same manner: on January 26, 2023, [Appellees] were served with notice of the district court clerk's annotation regarding copy fees for the Final Judgment and related pleadings; on March 29, 2023, [Appellees] were served with notice of the filing of the *Praecipe* for Exemplification; on April 4 and 5, 2023, [Appellees] were served with notice of the granted Exemplification and receipt of payment, respectively.  After receiving those notices through the federal court, and throughout that time, [Appellants] did not receive any objection or comment from [Appellees] — nor did [Appellants] expect to receive any objection or comment per the understanding and agreement amongst counsel to reconvene once the case was fully transferred.

30. On April 6, 2023, . . . counsel received the Certificate of Exemplification and additional documents and immediately sent same to the Adams County Prothonotary.  The Adams County Prothonotary confirmed receipt of same on April 12, 2023, and advised that it will open the case and assign a docket number, as of the original date of March 15, 2023, when the *praecipe*, certified Final Judgment and related pleadings were received.

*Id*. at 5-10, ¶¶15-30 (cleaned up) (select citations omitted) (emphases added); *see also* Plaintiffs' Response to Bunzl and Kennie's Market Preliminary Objections, 5/23/23, at 11-33.  Appellees do not contest Appellants' representations concerning their communications with the Adams County Prothonotary or the Clerk of Court for the Middle District of Pennsylvania.

- 13 -

In sustaining Appellees' preliminary objections, the trial court claimed to have considered the facts as pled in Appellants' response to draw its conclusion that Appellants did not act with sufficient deliberate speed to perfect the transfer promptly. The trial court reasoned,

> [Appellants] attempt to explain the delayed filings by claiming they had regular but unsuccessful interaction with the Federal District Court Prothonotary concerning production of the certified record. According to [Appellants], the delayed production of the certified record was due to untimely response by the District Court Prothonotary rather than any lack of good-faith on their part. Unfortunately for [Appellants], their explanation is insufficient. Although it appears there was some prompt effort on the part of [Appellants] to obtain some pleadings from the District Court within days of the dismissal order being entered by Judge Conner, that effort was less than thorough. As early as January 20, 2023, [Appellants'] counsel, by their own acknowledgement, was accurately advised by the Adams County Prothonotary's Office as to what was required in order to properly effectuate the transfer. By correspondence dated January 26, 2023, the United States District Court advised [Appellants'] counsel as to the "copies" of the documents to be provided pursuant to . . . counsel's request. According to this correspondence, [Appellants] requested only 108 of approximately 715 pages comprising the federal pleadings. Although this [c]ourt cannot opine as to the accuracy of . . . counsel's claims regarding their interaction with the Federal Middle District Prothonotary, even under counsel's rendition, significant gaps are apparent in their efforts.[8] Presuming a clerical issue occurred with the Middle District's filing office, which this Court does not, still does not excuse [Appellants'] failure to seek extension of the deadline through the agreement of counsel or pleading before this [c]ourt. This lack of action is indicative of a lack of good-faith.

---

[8] [Appellants'] counsel claims to have contacted the Middle District Court Clerk's Office for an update on February 13, 2023. The next definitive date provided as to actions on their part is March 2, 2023, when they claimed to have become aware of an alleged mistake on the part of the Middle District Court's Prothonotary's Office. There is no credible indication of any urgency on the part

of . . . counsel as a result of the February 13, 2023 contact despite the rapidly approaching deadline.

Trial Court Opinion, 10/16/23 at 7-8 (citation omitted).

It is clear from the certified record that the trial court failed to apply the correct standard of review in sustaining the preliminary objections and misapplied the law in crafting a proposed thirty-day deadline for Appellants to perfect the transfer. Specifically, the trial court's legal conclusion as to the Appellants' lack of good-faith effort to perfect the transfer ignores the fact that no significant dispute existed among the parties regarding Appellants' contacts with the respective courts. Instantly, none of the parties pursued an evidentiary hearing, presumably because a consensus existed as to the underlying facts.

We are charged with reviewing the trial court's conclusion that Appellants did not act promptly under § 5103(b). As noted *supra*, in **Williams**, 577 A.2d 907, this Court for the first time construed § 5103(b) as imposing a timing requirement which compels a plaintiff to transfer a case to a Pennsylvania court once a federal court has dismissed a claim for lack of jurisdiction. No specific deadline was identified, and instead, plaintiffs were required to complete the transfer "promptly." Calls for legislative action to clarify the statute have not yet elicited a response from the General Assembly. **See Williams**, 577 A.2d at 909 n.1 ("We are hopeful . . . that our Legislature will see fit in the future to include a time requirement in the provisions of 42 Pa.C.S.A. § 5103.").

Although the trial court recognized the absence of a specific period to perfect the transfer and noted the legislature's failure "to act in this area despite [our] prompting," the trial court nevertheless imposed a thirty-day time limitation as an alternative basis to dismiss the action. *See* Trial Court Opinion, 10/16/23, at 5 n.6, 9 n.10 (citing **Quiah v. Devereux Foundation, Inc.**, 303 A.3d 523 (Pa.Cmwlth. 2023) for the principle that "transfer under Section 5103(b) does not preserve a cause of action filed after expiration of the statute of limitations unless the same is filed in compliance with the tolling provisions of 28 U.S.C. § 1367(d) which requires that a transfer action be filed in the state jurisdiction within 30 days of dismissal by a Federal Court."). The trial court's application of § 1367(d) to this case is erroneous as a matter of law, and its reliance upon **Quiah** is unpersuasive, not only because this Court is not bound by the decisions of our sister jurisdiction, but also because the trial court misapprehended the Commonwealth Court's holding.

Section 1367(d), which applies specifically to the federal court's decision to decline to exercise supplemental jurisdiction, rather than the diversity jurisdiction at issue in the case at bar, provides that a statute of limitations "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). Thus, upon the dismissal of an action that invoked the federal court's supplemental jurisdiction, the federal statute tolls the state court statute of limitations for the duration that the action was pending in federal

- 16 -

court plus an additional thirty days following the federal court dismissal. As the plaintiff in **Quiah** had previously filed the complaint invoking the federal court's supplemental jurisdiction on the eve of the expiration of the two-year statute of limitations applicable to her pendant state claims and filed her new complaint in the state court beyond the thirty-day extension provided by § 1367(d), the Commonwealth Court affirmed the trial court's decision to grant the defendant's preliminary objections to the complaint. The court reasoned,

> by the time the amended complaint with the certified transcript was filed . . . the statute of limitations had run . . . because the statute was tolled for only 30 days . . . and Plaintiff had no time left when the federal action was filed.

**Id**. at 530.

Hence, notwithstanding the trial court's protestations, rather than fashioning a brightline thirty-day limitation to perfect a § 5103(b) transfer, the Commonwealth Court concluded that in order to get the benefit of the thirty-day extension of the statute of limitations outlined in § 1367(d), the plaintiff must demonstrate "promptness" in filing the state claim.[6] It

---

[6] The trial court's confusion likely flows from the Commonwealth Court's declaration that it would read 28 U.S.C. § 1367(d) *in pari materia* with 42 Pa.C.S. § 5103(b) to determine whther Ms. Quiah acted promptly in transferring her case pursuant to § 1367(d). However, consistent with the Commonwealth Court's holding that we quoted in the body of this memorandum, the Commonwealth Court did not mandate, much less suggest, that a § 5103(b) transfer is required to be completed within thirty days. **See Quiah v. Devereux Foundation**, **Inc.**, 303 A.3d 523, 529 (Pa.Cmwlth.
*(Footnote Continued Next Page)*

explained, "[t]hus, if a transfer is properly and promptly effected, the statute of limitations will run out after the federal dismissal, plus whatever time was remaining when the federal claim was filed, plus 30 days." *Quiah*, 303 A.3d 529 (emphasis added). Accordingly, insofar as § 1367(d) has no bearing on this case and there remains no set period to define "promptness," the trial court erred in relying upon *Quiah* as a basis to support its decision to dismiss Appellants' action.

Having confirmed that no specific period exists to comply with § 5103(b), we next outline the caselaw shaping what constitutes a prompt transfer under the statute. Following *Williams*, courts applied the new promptness requirement more strictly, as parties were on notice after that decision of its implementation. We honed this principle in *Collins v. Greene County Memorial Hosp.*, 615 A.2d 760 (Pa.Super. 1992), by drawing an analogy between the notion of promptness outlined in *Williams* and the "good faith" component of the rule announced in *Lamp v. Heyman*, 366 A.2d 882, 889 (Pa. 1976), concerning a plaintiff's effort to effectuate service.

Our High Court has explained the *Lamp* Rule as follows:

> [*Lamp*] and its progeny require a plaintiff to make a good-faith effort in diligently and timely serving process on a defendant. When a defendant presents a factual dispute as to whether a plaintiff fulfilled this duty, the plaintiff carries an evidentiary

---

2023) ("we believe the[ caselaw] created confusion by conflating the 30-day period during which the statute of limitations is tolled pursuant to 28 U.S.C. § 1367(d) with a requirement that a transfer must be effected within 30 days.").

burden to demonstrate that she met her good-faith mandate. If a plaintiff presents credible evidence that she made this attempt at service, then she fulfills her requirement to prove good faith. If a plaintiff does not present such evidence, then she has failed to satisfy her evidentiary burden, regardless of whether her actions (or inaction) were intentional, unintentional, or otherwise. However, pursuant to **McCreesh** [**v. City of Philadelphia**, 888 A.2d 664 (Pa. 2005)], a trial court should not punish a plaintiff by dismissing her complaint where she is able to establish that her improper but diligent attempts at service resulted in the defendant receiving actual notice of the commencement of the action, **unless the plaintiff's failure to serve process properly evinced an intent to stall the judicial machinery** or otherwise prejudiced the defendant.

**Gussom v. Teagle**, 247 A.3d 1046, 1047-48 (Pa. 2021) (emphasis added).

Overall, "[w]hat constitutes a good faith effort [in this context] is a matter to be assessed on a case-by-case basis." **Englert v. Fazio Mechanical Services, Inc.**, 932 A.2d 122, 124 (Pa.Super. 2007) (cleaned up) (citations omitted).

Relying upon this overarching principle, the **Collins** Court upheld the promptness requirement imposed in **Williams**, reasoning that it was "consistent with the policy of avoiding stale claims, making the processes of justice as speedy and efficient as possible, and preventing the possibility of the plaintiff retaining exclusive control over the action for a period in excess of the statute of limitations." **Collins**, 615 A.2d 762. We reasoned that for a plaintiff to avail himself of the tolling afforded by Section 5103, he must not abuse that protection and subvert its purpose by failing to promptly transfer the action. **See id**., at 763 ("If . . . a litigant fails to promptly transfer the action to the appropriate court, then the litigant abuses that protection, . . .

- 19 -

subverts the policies underlying the statute of limitations, and undermines the speedy and efficient processes of justice.").

Critical to the trial court's apparent imposition of a brightline thirty-day rule in this case, there exists no Pennsylvania case in which an action was dismissed due to the transfer of an action from federal court in so few as two months. In the handful of cases addressing this issue, dismissal was upheld because of delays of at least three times that span. **See e.g., Kelly v. Hazleton Gen. Hosp.**, 837 A.2d 490, 496 (Pa.Super. 2003) (affirming dismissal of state action transferred about *eight* months after federal dismissal, as it manifested "indifference" to the procedural requirements of Section 5103); **Collins**, 615 A.2d at 761-62 (affirming dismissal of state action transferred *seven* months after federal dismissal for lack of jurisdiction); **Chris Falcone, Inc. v. Ins. Co. of State of Pa.**, 907 A.2d 631, 640 (Pa.Super. 2006) (affirming dismissal of state action transferred *ten* months after federal dismissal for lack of jurisdiction); **Bradley v. West Chester Univ**., 273 A.3d 106 (Pa.Cmwlth. 2022) (granting judgment on the pleadings where plaintiff did not submit the certified federal judgment and relevant pleadings until *four years* after federal dismissal).

There also is a dearth of cases in which the party seeking a transfer has asserted that delays resulted from administrative errors that were out of its control. In at least one case, this Court has indicated that a transfer delay

may be forgiven if there is a reasonable explanation, and the defendants were not prejudiced:

> We are constrained to disagree with the trial court's dismissal of appellant's complaint based on a perceived violation of the § 5103 timeliness requirement . . . . It seems to us that the uncertainty resulting from the pending appeal, as well as the lack of necessity for proceeding in state court in the event the court of appeals reversed the federal dismissal, provides an explanation for the delay. Furthermore, appellees cannot claim prejudice, having no reason to believe the case had terminated since the [federal] appeal was still pending.

*Constantino v. Univ. of Pitt.*, 766 A.2d 1265, 1269-70 (Pa. Super. 2001).[7]

As stated above, Appellees explicitly invoked Pa.R.Civ.P. 1028(a)(2) in asserting that Appellants' *praecipe* to transfer failed to conform with § 5103(b) as it was not promptly filed with all the properly-certified documents from the federal district court. Since there is no specific deadline or definition of what constitutes a prompt filing, Appellants responded to the preliminary objections

_____

[7] Our reasoning in *Constantino* supports the proposition that actual advance notice of a transfer, a lack of prejudice from a transfer's delay, and reasonable explanations for a delayed transfer may be relevant factors for promptness under Section 5103. This is arguably inconsistent with our opinion in *Falcone*, where we stated that a ten-month lag between a federal dismissal and the filing of a *praecipe* to transfer evidenced a disregard for the statute's requirements, making prejudice a non-factor. *See Falcone*, 907 A.2d at 640. Nevertheless, the cases may be reconciled, as the plaintiffs in *Falcone* "basically ignored Section 5103 until ten months" after the dismissal, and they offered no explanations for their delay, whereas the plaintiffs in *Constantino* did give a compelling reason for not completing the transfer sooner. *Falcone* may therefore be read as dispensing with prejudice as a factor only in the circumstance where the plaintiffs have demonstrably flouted the promptness requirement without any reasonable explanation.

by outlining their months-long ordeal in securing the certified copies of the relevant pleadings from the federal court and filing them in the common pleas court despite their persistent efforts and immediate requests for the documents.

As pled in their response to the preliminary objections, Appellants immediately ordered the required certified copies of the final judgment and related pleadings following the entry of the final judgment in district court. There was a documented administrative breakdown in the Appellants' contacts with both the district court and Adams County Court of Common Pleas that led to a delay of approximately sixty days despite their diligence and ongoing efforts to secure certified copies of not only the final judgment and related pleadings as outlined in the statute, but also **all** the remaining documents as demanded by the Adams County Prothonotary.

These facts do not warrant dismissal as violating the "general promptness requirement to the rule" that we outlined in ***Williams***. ***See Williams***, 577 A.2d at 910. For example, in the specific context of ***Lamp***, which the trial court evoked in dismissing this litigation, we found that a plaintiff may act in good faith even where many months elapse between initial, unsuccessful attempts at service and successful notification by alternative means. ***See Frick v. Fuhai Li***, 225 A.3d 573, 581-82 (Pa.Super. 2019) (finding plaintiff acted in good faith where approximately eight months elapsed between her unsuccessful attempts at personal service at one address and the

accomplishment of service by alternative means). Indeed, the touchstone of **Lamp** is that the party's good-faith effort evinces a lack of intent to stall the judicial machinery or prejudice the defendant.

Here, Appellants provided Appellees advanced notice of the transfer and immediately initiated the process to perfect the transfer of this litigation to Adams County within days of the January 20, 2023 final judgment dismissing it from federal court. The first delay was associated with the district court's inability to generate the required payment invoice for the cost of producing the certified copies of the final judgment and related pleadings. Once that issue was resolved, there was a second setback when, due to an administrative error, the court failed to process Appellants' request until March 10, 2023. Thereafter, upon receiving the certified transcript of the final judgment and "a certified transcript of the pleadings from the federal action," as outlined in **Williams**, 577 A.2d at 910, the Adams County Prothonotary demanded certified copies of several additional documents that the district court had not provided. Appellants immediately requested those documents from the district court and filed them with the Adams County Prothonotary upon their receipt.

These facts reflect Appellants' diligent effort to promptly complete the transfer from federal court pursuant to § 5103(b). It is undisputed that after providing advanced notice of the transfer, Appellants filed the *praecipe* to transfer in Adams' County within approximately sixty days from the federal

judgment notwithstanding the documented administrative errors, and the trial court declined to consider whether Appellees suffered prejudice as a result of the delay. **See** Trial Court Opinion, 10/16/2023, at 8-9. As there is no authority to dismiss an action for a two-month delay in transferring a case from federal court pursuant to § 5103(b), we reverse the trial court order sustaining Appellees' preliminary objections.

Order reversed. Case remanded. Jurisdiction relinquished.

Judge Murray joins this Memorandum.

Judge Stabile files a Concurring & Dissenting Memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/28/2025